IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GABRIEL MONTANO-RODRIGUEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 21-cr-10042-JES |
| v. | ) | No. 23-cv-01431-JES |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### OPINION AND ORDER[1]

Petitioner Gabriel Montano-Rodriguez has moved, *pro se*, under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[2] The government filed a response (Doc. 66, the "Response"), and Petitioner replied. Doc. 67 (the "Reply").[3] For the reasons indicated herein, the Motion is DENIED in its entirety and the Court declines to issue a Certificate of Appealability

---

[1] Of note, all citations are to Petitioner's criminal docket.

[2] Petitioner originally filed his § 2255 motion in Docket Entry 61. However, his reply referenced an "amended motion" that was not filed with the Court. And so, the Court provided Petitioner an opportunity to file the "amended motion." The Court also provided the Government with a deadline to respond to the amended motion. Petitioner filed his handwritten amended motion (Doc. 71), to which the government did not respond. Petitioner also filed a typed amended motion (Doc. 74) that is effectively identical to his handwritten amended motion. The amended motion is more akin to a supplemental filing, or an affidavit in support of his ineffective assistance claims that are discussed below. Given the Government's failure to object to the contents, or filing, of the amended motion, Petitioner is GRANTED leave to file Doc. 71 and Doc. 74. Furthermore, the Court considers Doc. 61, Doc. 71, and Doc. 74 collectively as the "Motion."

[3] The Court recognizes that the Reply brief raises new claims by referencing an undocketed amended motion that may be substantively different from the amended motions on the record (Doc. 71 and Doc. 74). It is true that "arguments raised for the first time in [a] reply brief are waived because they leave no chance to respond." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). However, given that Petitioner filed a motion for leave to file the Reply, and the Government has failed to respond, Petitioner's motion (Doc. 67) is GRANTED, and the Court shall consider claims within it that were not previously raised in the initial motion (Doc. 61). To the extent that the Reply raises new claims, it shall be incorporated into the Court's reference to the "Motion."

1

("COA"). Additionally, no evidentiary hearing is necessary. This matter is now TERMINATED. The Clerk of Court is directed to close the case.

## I.    BACKGROUND

On September 21, 2021, Petitioner was charged in a single-count indictment with Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine ("Count One") in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Doc. 1.

On June 29, 2022, Petitioner entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), pleading guilty to the single count levied against him. Doc. 28 (Plea Agreement); *see also* Minute Entry Dated 06/29/2022. Petitioner agreed to the following Stipulation of Facts (Doc. 28 at 12-13):

> Beginning in December 2018 and continuing through at least October 1, 2019, the Defendant, along with at least two other people, reached an agreement or came to an understanding to distribute and possess with the intent to distribute more than 50 grams of methamphetamine (Actual within the Central District of Illinois, including Peoria and Tazewell Counties and elsewhere. The Defendant, with help of at least two other individuals, arranged for the acquisition of transportation of ice methamphetamine from the southwest border of the United States to a wholesale customer base throughout Peoria and Tazewell Counties.

> The Defendant often used one or more close associates who handled money arrangements and communications on his behalf with his wholesale customers. On at least three occasions during the course of the conspiracy, the Defendant traveled to central Illinois with significant amounts of ice methamphetamines for resale. For example, in late January 2019, the Defendant, accompanied by other drug associates, departed Arizona with approximately fifteen (15) pounds of ice methamphetamine to resell. Once they arrived in Tazewell or Peoria County, the Defendant would stay at an area hotel and direct the other associates to deliver less amounts-typically no more than three ounces at a time- of ice methamphetamine to various customers until they ran out and needed to resupply. The Defendant would then collect the money from the drug sales and resupply the associates with more ice methamphetamine to sell.

> Based on numerous witness interviews, electronic evidence including historical cell-phone records and social media records, electronic surveillance records, subpoenaed and financial records, and arrest reports and interviews, it was determined that the Defendant was responsible for working with others to traffic

2

and distribute large quantities of ice methamphetamine in Tazewell and Peoria Counties over the course of several months.

The methamphetamine the Defendant dealt during the course of the conspiracy was the more pure, actual form of methamphetamine commonly referred to as "ice" methamphetamine. Specifically, the meth seized from one of Defendant's reporting associates on August 21, 2019 (in East Peoria, Illinois) was analyzed by the DEA North Central Laboratory and determined it to be 100% pure methamphetamine with a final total weight of 222 grams. This ice methamphetamine was part of and consistent with the methamphetamine involved in the Defendant's conspiracy.

On January 13, 2023, Petitioner was sentenced to 324 months of imprisonment, and a five-year term of supervised release. *See* Minute Entry Dated 01/13/2023. Judgment was entered on January 17, 2023. Doc. 39.

Approximately eleven months later, Petitioner moved to vacate his sentence under § 2255, alleging multiple grounds for relief, including claims of Ineffective Assistance of Counsel ("IAC"). The Court now turns to the Motion.

## II.    LEGAL STANDARD

§ 2255 Generally

"Federal prisoners who seek to collaterally attack their conviction or sentence must ordinarily bring an action under § 2255, 'the federal prisoner's substitute for habeas corpus.'" *Camacho v. English*, 872 F.3d 811, 813 (7th Cir. 2017) (quoting *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)). "Relief under [§ 2255] is an 'extraordinary remedy.'" *Coleman v. United States*, 79 F.4th 822, 826 (7th Cir. 2023) (quoting *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007)). Such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

Section 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues decided on direct appeal. *See Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, or that he is innocent. *See Grzegorczyk v. United States*, 997 F.3d at 743(7th Cir. 2021). However, "claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion." *Perez v. United States*, JPS-23-718, 2023 WL 4423908, at *3 (E.D. Wis. July 10, 2023) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

Furthermore, a district court must liberally construe a *pro se* petitioner's § 2255 motion. *See United States v. Lomax*, 51 F.4th 222, 227 (7th Cir. 2022). But, "it [is] not [a district] court's duty to imagine every possible argument for [a § 2255 movant], even when liberally construing his pro se filings." *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021). Finally, "'[w]hen considering a § 2255 motion, the district court reviews the record and draws all reasonable inferences in favor of the government.'" *United States v. Mandell*, ARW-18-271, 2022 WL 1499931, at *3 (N.D. Ill. May 11, 2022) (quoting *United States v. Saleh*, RWG-15-11552, 2016 WL 2766305, at *2 (N.D. Ill. May 13, 2016) in turn citing *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992)).

Framework Governing IAC Claims

"The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012) (citing *Strickland v. Washington*, 466 U. S. 668, 686 (1984)). To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Because the *Strickland* test requires both deficient performance and prejudice, an

4

ineffective assistance of counsel claim can fail for lack of prejudice "without ever considering the question of counsel's actual performance," and vice versa. *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009).

To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688)). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotations and citation omitted). "Importantly, '[j]udicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat 'the distorting effects of hindsight.'" *Atkins v. Zenk*, 667 F.3d 939, 944–45 (7th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)). In examining counsel's conduct, the courts are "highly deferential" and presume that a counsel's decisions constitute a reasonable litigation strategy. *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005); *see also United States v. Berg*, 714 F.3d 490, 499 (7th Cir. 2013).

### III.    ANALYSIS

In the Motion, Petitioner is not abundantly clear as to the precise nature of his grounds for relief. It appears that he brings claims concerning IAC, actual innocence, sentencing improprieties, and an invalid guilty plea. The Court first addresses Petitioner's claims challenging the integrity of his guilty plea and plea agreement, as it sets the stage for the Court's review of his other claims. This is because Petitioner's plea agreement contains a clear and unambiguous waiver of his right

to appeal (excluding excepted claims), as well as a waiver of his right to collateral attack (outside of IAC claims). Doc. 28 at 5-6. If Petitioner's agreement and guilty plea are valid, then so too is the waiver of his right to appeal and collaterally attack his conviction and sentence. *See United States v. Nulf*, 978 F.3d 504, 506 (7th Cir. 2020).

Claim #1: Petitioner's guilty plea was invalid as the Government breached the plea agreement.

In essence, Petitioner seems to argue that his guilty plea was involuntary and unknowing because the Government failed to keep its promise to withdraw any special findings or notices pursuant to 21 U.S.C. § 851. *See* Doc. 61 at 8-12.[4] Petitioner suggests that had the Government moved to withdraw the § 851 findings, he would have been subject to only a 120-month sentence. Petitioner's claim fails for a plethora of independent bases.

First and foremost, Petitioner's claim, as it relates to his allegation that the Government breached the plea agreement, is procedurally defaulted.[5] A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at sentencing or on direct appeal. *See Elzy v. United States*, 205 F.3d 882, 883-84 (6th Cir. 2000) (concluding the petitioner's claim in a § 2255 motion that the Government failed to comply with its obligations under a plea agreement was procedurally defaulted for failure to raise the issue at sentencing or on direct appeal); *see also United States v.*

---

[4] Section 851 provides procedures that the prosecution must follow to establish that a defendant was previously convicted of a "serious drug felony" and is therefore subject to increased penalties, such as a higher mandatory minimum sentence.

[5] The Government has not argued that any of Petitioner's claims are procedurally defaulted. However, it has also not waived the affirmative defense of procedural default, either implicitly or explicitly. And so, the Court may raise the issue of procedural default, *sua sponte*. *See Varela v. United States*, 481 F.3d 932, 936 (7th Cir. 2007); *see, e.g.*, *Quiroz v. United States*, TMD-18-3121, 2019 WL 6034120, at *5 n.1 (N.D. Ill. Nov. 13, 2019); *Smith v. United States*, PPS-11-53, 2018 WL 4600512, at *5-6 (N.D. Ind. Sept. 21, 2018); *Groel v. Simmons*, DRH-13-1008, 2017 WL 1076891, at *4 (S.D. Ill. Mar. 22, 2017); *Duncan v. United States*, JBM-16-1118, 2016 WL 3440560, at *2 n.1 (C.D. Ill. June 20, 2016).

*Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) ("Because [the petitioner] never challenged his three remaining predicate convictions at sentencing or on direct appeal, he would typically be 'barred from raising the[se] claim[s] on collateral review.'") (quoting *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006)); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993) (holding that a challenge to sentencing court's calculations was not cognizable in collateral proceeding where petitioner alleged no cause for his failure to raise objection before sentencing court or to appeal his sentence on such grounds), *superseded on other grounds by rule*, 3d Cir. L.A.R. 31.3 (2002), *as recognized in United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012); *Boria v. United States*, 427 F. Supp. 3d 143, 150 (D. Mass. 2019) (holding that procedural default barred consideration of an argument for the first time in a § 2255 petition where the federal prison failed to raise the claim at sentencing or on direct appeal); *United States v. Green*, 955 F. Supp. 125, 126 (D.D.C. 1997) (concluding that when a defendant has failed to raise claim at sentencing and on direct appeal, absent a showing of cause and prejudice, the claim is barred from collateral review).[6] Here, the record plainly shows that Petitioner did not challenge the Government's compliance with the plea agreement at his sentencing or on direct appeal, and so his claim is "doubly defaulted." *Hale v. United States*, 710 F.3d 711, 714 (7th Cir. 2013).[7]

---

[6] This Court was unable to locate any Seventh Circuit case law indicating that procedural default may arise, especially in the context of a petitioner who entered a plea agreement that contains an appeal waiver, for failure to raise a claim at sentencing. Rather, Seventh Circuit boilerplate states, though with varying terminology throughout the caselaw, that "[a] claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (citing *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009)). This Court sees no reason as to why, as numerous other circuits have concluded, procedural default cannot arise from failure to raise an issue at sentencing.

[7] Of relevance here, the Seventh Circuit, albeit in a dated case, stated: "[A] federal prisoner seeking § 2255 review of issues which could have and should have been raised at trial and on direct appeal, **in a Rule 35 motion**, or on appeal of the Rule 35 motion, must establish cause for and actual prejudice resulting from the failure to previously raise the constitutional issue." *United*

Yet, Petitioner's procedural default may be excused if he can "demonstrate both (1) good cause for his failure to raise the defaulted claim before collateral review and (2) actual prejudice stemming from the violations alleged in the defaulted claim." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Theodorou v. United States*, 887 F.2d 1336, 1340 (7th Cir. 1989)).

To be sure, Petitioner has failed to raise any cognizable excuse for his failure to object to the Government's compliance with the plea agreement at sentencing. Moreover, the Seventh Circuit has squarely held that when, as here, a defendant enters a plea agreement with an appeal waiver, he agrees "to have a claim of breach of the plea agreement 'resolved by the district court.'" *United States v. Odeh*, 832 F.3d 764, 768 (7th Cir. 2016) (quoting *United States v. Hare*, 269 F.3d 859, 862 (7th Cir. 2001)). This does not mean that the district court should later resolve an alleged breach in a § 2255 motion. *Cf. United States v. Hicks*, 129 F.3d 376, 377-79 (7th Cir. 1997) (admonishing defendant for failing to bring a breach of plea agreement allegation "to the district court's attention at sentencing, where the district court could have remedied the situation."). Furthermore, Petitioner could certainly have raised this claim on direct appeal, despite his appeal waiver and failure to raise the issue at sentencing, since the Seventh Circuit has clearly stated that it has the ability to review an objection to a guilty plea for plain error, even if the objection was waived. *See Doe v. United States*, 51 F.3d 693, 698 n.4 (7th Cir. 1995).[8] Accordingly, Petitioner

---

*States v. Kovic*, 830 F.2d 680, 684 (7th Cir. 1987) (emphasis added). Thus, to the extent Petitioner could have raised his qualm in a post-sentencing motion under Fed. R. Crim. P. 35, his claim is triply defaulted.

[8] In plain error review, which the Court looks to for guidance in assessing prejudice due to the novelty of addressing Petitioner's breach of plea claim for the first time in a § 2255 motion, the Seventh Circuit requires that a defendant "show not only that there was (1) a breach that (2) was clear and obvious, but also that it (3) affected his substantial rights and (4) seriously disturbed the fairness, integrity, and reputation of the judicial proceedings." *United States v. Wyatt*, 982 F.3d 1028, 1030 (7th Cir. 2020) (citation omitted).

has failed to establish cause to excuse his default. However, in an abundance of caution, the Court shall assume arguendo that Petitioner's oblique reference to the ineptitude of his counsel in connection with this issue somehow justifies his failure to bring this claim at an earlier juncture. *See Hinton v. United States*, AJS-15-752, 2015 WL 1943261, at *3 (N.D. Ill. Apr. 29, 2015) ("[I]t is well-established that '[m]eritorious claims of ineffective assistance can excuse a procedural default.'") (quoting *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014)). Yet, even with this assumption, Petitioner's claim remains defaulted, as he cannot show prejudice.

Paragraph 26 of the plea agreement contains the Government's promise at issue. It states, in part, Doc. 28 at 10-11:

> At the time of sentencing, the United States will move [sic] withdraw any Special Findings and/or any Notice of Prior Conviction(s) pursuant to 21 U.S.C. § 851 as to this defendant. As a result, the Defendant will face only a 120-month mandatory minimum…

Although not acknowledged by the Government in the Response, Assistant United States Attorney Katherine Legge did not move to withdraw the § 851 findings at Petitioner's sentencing. *See* Doc. 64 (Sentencing Transcript). Thus, the Government did indeed technically breach the plea agreement. Yet, the Government's technical breach had no consequence whatsoever. For one, the Court reviewed Paragraph 26 at the plea colloquy and AUSA Legge confirmed that the Government intended to withdraw any special findings or notices under § 851 at sentencing. *See* Doc. 65 (Plea Colloquy Transcript) at 10-11. Thus, the Court was well aware that § 851 would not factor into Petitioner's sentence. Further, the Presentence Investigation Report (Doc. 37, "PSR"), which was adopted by this Court at Petitioner's sentencing (Doc. 64 at 8), clearly stated that the Government would move to withdraw the § 851 findings and thus Petitioner would face a mandatory minimum sentence of only 120 months. *See* Doc. 37 at 4. Further, both the PSR (Doc. 37 at 25) and probation's sentencing recommendation (Doc. 38) clearly state that Defendant's

mandatory minimum sentence is 120 months. This Court would not have imposed a lower sentence had the Government explicitly moved to withdraw the § 851 information at sentencing. *Cf. United States v. Collins*, 986 F.3d 1029, 1032-34 (7th Cir. 2021) (concluding that the defendant was not entitled to relief as to a breach of a plea agreement alleging the Government failed to inform the district court of a safety valve proffer at sentencing, *inter alia*, because the district court was well aware of the proffer through prior proceedings). Accordingly, the Petitioner is entitled to no relief as to the Government's breach. *See Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("[A] prosecutor's breach of a plea agreement can be actionable. However, if the breach is insubstantial, immaterial, technical, or cured, then the defendant is entitled to no relief.") (citations omitted). Therefore, Petitioner's claim that the Government's breach of the plea agreement rendered his guilty plea invalid must be denied, *in toto*, due to procedural default.

Even so, Petitioner's claim also fails as it is premised on a fundamental misunderstanding of the nature of the Government's promise. In particular, Petitioner seems to state in the Motion that the Government guaranteed that he would be sentenced to only 120 months after the § 851 findings were withdrawn. However, the plea agreement makes clear that the effect of the withdrawal would only relate to the mandatory minimum sentence, rather than the entirety of the imposed sentence. And, the plea agreement also clearly states that Petitioner's sentence term would ultimately be determined by the Court. Doc. 28 at 9. Furthermore, at the plea hearing the Court asked Petitioner's counsel as to the estimated sentencing range, and counsel responded by stating it was between 262 and 327 months. Doc. 65 at 14. The Court then stated to Petitioner that the advisory guideline range could be more or less than his counsel's estimate, and thus his sentence could be greater or less than the advisory range, and Petitioner, when asked if he understood, remarked: "Yes, sir." *Id.* at 15. Petitioner's statements under oath at his plea colloquy are presumed

10

true. *See United States v. Dyer*, 892 F.3d 910, 914-15 (7th Cir. 2018). Therefore, Petitioner cannot claim that the Government's failure to procure a 120-month sentence undermined the validity of the plea agreement and guilty plea, as Petitioner was placed on notice as to the possible duration of his sentence, and, no such promise as to sentence length, or even to recommend a particular sentence or sentencing range, was made.

Finally, Petitioner's claim also fails under the tenants of contract law, which generally applies to plea agreements. *See United States v. Davis*, 761 F.3d 713, 715 (7th Cir. 2014). In looking to contract law, "the Supreme Court has stated a plea-agreement breach 'does not cause the guilty plea, when entered, to have been unknowing or involuntary.'" *United States v. Woodberry*, 550 F. App'x. 759, 762 (11th Cir. 2013) (quoting *Puckett v. United States*, 556 U.S. 129, 137 (2009)). Thus, the thrust of Petitioner's claim, *i.e.*, asserting that his plea agreement was unknowing and involuntary due to breach, is at odds with precedent. Indeed, an appropriate remedy to a breach may be rescission of the agreement in extreme circumstances, or specific performance of the agreement at resentencing, *see United States v. Hallahan*, 756 F.3d 962, 972 (7th Cir. 2014), neither of which are expressly requested by Petitioner. Yet, for the reasons discussed throughout this opinion, Petitioner was not prejudiced by the alleged breach and such remedies would therefore be unavailable to him even if his claim were properly before the Court.

In light of the foregoing, the Motion is DENIED as to Petitioner's claim that the Government's alleged breach rendered his guilty plea invalid.

Claim #2: Petitioner claims that his counsel was ineffective by lying to the Court.

In the Reply, Petitioner avers that his counsel provided false information to the Court. Doc. 10-12. He also claims in the same briefing, although unrelatedly, that the prosecutor failed to fulfill his "obligation to seek justice." *Id.* at 11. The Court notes that perfunctory and undeveloped

11

arguments and arguments that are unsupported by pertinent authority are waived, even where those arguments raise constitutional issues. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008) (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)). Petitioner's arguments here are not supported by any specific facts or explanations of his conclusory assertions, nor does he offer any case law to support them. Accordingly, the Court deems these grounds for relief to be waived and DENIES the Motion as to this claim.

Claim #3: Petitioner's counselors were ineffective due to a conflict of interest.

The Court turns to Petitioner's claim, seemingly lodged under the guise of IAC, that his counsel at the plea-bargaining stage, Charles Schierer, and his counsel at sentencing, Mark Wertz, had a "conflict of interest." Doc. 67 at 3-8.

"To establish a violation of his Sixth Amendment right to conflict-free counsel, the defendant 'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *United States v. Lewisbey*, 843 F.3d 653, 657 (7th Cir. 2016) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "The first step in doing so is 'establish[ing] the existence of a conflict of interest' and the second is showing adverse effect. *United States v. Wright*, 85 F.4th 851, 858-59 (7th Cir. 2023) (quoting *United States v. Coscia*, 4 F.4th 454, 475 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1127 (2022)). "An actual conflict exists if an attorney is torn between two different interests," *United States v. Holman*, 314 F.3d 837, 845 (7th Cir. 2002), or "required to make a choice advancing his own interests to the detriment of his client's interests." *Stoia v. United States*, 109 F.3d 392, 395 (7th Cir. 1997) (citations omitted).

Here, Petitioner has failed to provide any concrete (or porous, for that matter) evidence to establish the existence of a conflict of interest between him and his attorneys. Petitioner also failed to provide any information concerning the nature of an alleged conflict of interest. The Court

cannot divine what type of conflict Petitioner alleges, and nothing in the record evinces any conflict between Petitioner and his counselors. Indeed, when Petitioner's initial counsel, Charles Schierer, filed a motion to withdraw representation (Doc. 31), the Court held a hearing, and neither Petitioner nor any other person indicated the existence of a conflict.[9] Accordingly, the Motion is DENIED as Petitioner has failed to establish a conflict of interest.[10]

Claim #4: Petitioner's counsel was ineffective in negotiating his plea agreement.

Petitioner argues that his counsel at the time of his guilty plea, Charles Scheier, was ineffective in negotiating his plea agreement, thus rendering the agreement involuntary and unknowing. Doc. 61 at 6-8. In particular, Petitioner points to instances where he believes he was promised a certain outcome which never occurred. *See* Doc. 74.[11] The Court shall detail these instances, and discuss why each fails on the merits, but before doing so, the Court turns to the case law governing an attorney's obligations in the plea-bargaining process.

"The right to effective representation extends, of course, to the plea-negotiation process." *Anderson v. United States*, 94 F.4th 564, 581 (7th Cir. 2024) (citing *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (collecting cases)). And, a plea that is born of ineffective assistance of counsel is

---

[9] The transcript for this hearing is not presently on the docket, and so the Court reviewed the audio log to ensure its memory of the hearing was accurate. And, of relevance to Petitioner's claims regarding the validity of his guilty plea, he did not raise any concerns as to his plea agreement at the motion hearing, even though it would have been an opportune time to do so.

[10] The Motion would also fail because Petitioner has failed to articulate how the supposed conflict of interest adversely affected his counsel's performance. Indeed, the Petitioner has not met the requirement of showing "'specific instances where [his] attorney could have, and would have, done something different if that attorney'" was not conflicted. *United States v. Grayson Enterprises, Inc.*, 950 F.3d 386, 398 (7th Cir. 2020) (quoting *Griffin v. McVicar*, 84 F.3d 880, 887 (7th Cir. 1996) in turn quoting *United States v. Cirrincione*, 780 F.2d 620, 630–31 (7th Cir. 1985)).

[11] The Court finds it curious that the Government asks that the Court to deny the Motion, in large part, for Petitioner's failure to file an affidavit. And yet, when Petitioner filed his amended motion, which may readily be construed as an affidavit, the Government chose not to respond.

not knowing or voluntary. *United States v. Harper*, 934 F.3d 524, 529 (7th Cir. 2019) (citing *Hurlow v. United States*, 726 F.3d 958, 967 (7th Cir. 2013)). "In the plea-bargaining context, [] a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Spiller v. United States*, 855 F.3d 751, 755 (7th Cir. 2019) (citation omitted). As to prejudice, "the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *United States v. Jansen*, 884 F.3d 649, 659 (7th Cir. 2018) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "[A] 'mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice.'" *United States v. Givens*, JZL-19-1696, 2022 WL 4051094, at *6 (N.D. Ill. Sept. 2, 2022) (quoting *United States v. Fudge*, 325 F.3d 910, 923 (7th Cir. 2003) in turn citing *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993)). And, of relevance here, "'a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.'" *Thompson v. United States*, 732 F.3d 826, 829-830 (7th Cir. 2013) (quoting *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)).

Petitioner's main contention, as it connects to his counsel's ineffectiveness in the plea-bargaining process, appears to relate to his counsel's failure to secure a lower sentencing range and/or his counsel's indication that he would receive a lower range. Doc. 61 at 6-7.[12] However, Petitioner never claimed, at the plea colloquy or in the Motion, that his counsel (as opposed to the Government) promised him a lower sentence. *See* Doc. 65 at 6. Rather, Petitioner claims that his

---

[12] Notably, this is inconsistent with his breach of plea claim, as that claim is rooted in the false belief that he was promised a 120-month sentence. If such a sentence were promised by the Government, then his IAC claim here is completely eviscerated.

counsel worked "to secure a sentencing range of 120 to 180 months," and that counsel believed the Government to be amenable to this range. Doc. 74 at 2. That counsel attempted to secure a lower guideline range cannot possibly form the basis of an IAC claim – after all – the Court cannot imagine a scenario where an effective counsel would not pursue, at least at some point, a lower-than-guidelines sentence. And, there is no basis to believe that counsel's efforts were not in good faith. *See Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006) (noting that, when courts consider counsel's alleged mischaracterization of sentencing consequences, it need consider whether counsel acted in good faith). Moreover, even if counsel had mistakenly predicted a lower guidelines range, that alone is insufficient, at least in this case, to show deficient performance. *See, e.g.*, *Ferguson v. United States*, GPM-07-847, 2008 WL 5381945, at *7 (S.D. Ill. Dec. 23, 2008) ("If Attorney Roosevelt mistakenly predicted the sentencing consequences of the plea agreement (not likely), 'a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great.'") (quoting *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996)). And, at the plea colloquy, Petitioner clearly stated on the record and under oath that he was satisfied with his counsel. Doc. 65 at 5. Thus, Petitioner fails to show that his counsel's performance was deficient, and so this claim must fail.

Petitioner's claim also fails on the basis that he cannot show prejudice. In particular, Petitioner has failed to state affirmatively that he would have proceeded to trial if not for his counsel's allegedly defective performance, nor has he provided evidence in support of such a claim. District Courts routinely dismiss such claims on these grounds alone. *See, e.g.*, *Veach v. United States*, GPM-06-565, 2008 WL 2789322, at *9 (S.D. Ill. July 18, 2008) (concluding that IAC plea negotiation claim failed for failure to assert that petitioner would have pleaded not guilty but-for his counsel's performance); *United States v. Ryan*, 986 F. Supp. 509, 513 (N.D. Ill. 1997)

(noting that the expectation of a lower sentencing range as a major factor in pleading guilty did not establish prejudice without evidence that the petitioner would otherwise proceed to trial). Petitioner also cannot establish prejudice because he has not set forth a basis for the Court to believe that the Government would have agreed to recommend the lower range. *See United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). This is especially so given that he admitted under oath to the stipulation of facts that supported his conviction. Doc. 65 at 12-14.

Petitioner also claims that his guilty plea was motivated by his fears for his own safety due to alleged violence in the facility where he was held in pretrial detention. Doc. 74. And, he avers that his counsel failed to timely prompt a transfer. However, immediate transfer was not a benefit of the plea agreement. *See* Doc. 28. And, Petitioner does not claim that he was ever promised a transfer. Further, counsel's suggestion, as asserted by Petitioner, that entering a plea agreement would help him get transferred, does not constitute constitutionally deficient performance, as it is reasonable to expect that entering a plea would expedite Petitioner's sentencing and therefore enable a quicker transfer to a BOP facility from the Tazwell County Jail. Thus, to the extent a possible transfer may have influenced Petitioner's decision to enter a plead guilty, it was not based on counsel's deficient performance. Moreover, even if counsel was ineffective in failing to secure an earlier transfer, Petitioner cannot demonstrate prejudice, as "prisons are dangerous places filled with violent people," and he does not provide any evidence to show that he would have fared better in a different carceral setting. *Ayoubi v. Hughes*, JBM-23-4121, 2023 WL 5501223, at *2 (C.D. Ill. Aug. 2, 2023) (citing *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008)).

Finally, Petitioner, perhaps in attempting to obviate the Court's consideration of his sworn statements, asserts that counsel advised him to not say anything at the plea colloquy that might threaten his opportunity to enter a guilty plea. Doc. 74. This excuse is unavailing. If Petitioner,

after hearing the statement of facts to which he admitted, or after hearing a possible sentencing estimate to which he understood, decided that a guilty plea was not in his best interests, then his attorney's advice would not prevent him from raising any issues with the Court. Indeed, Petitioner attested at the plea colloquy that he was of sound mind, no one threatened him, and he understood the consequences of his plea. Doc. 65 at 3-4, 6, 16. Moreover, it is not as though Petitioner received zero benefits from the plea agreement, as his sentencing range was lowered due to his acceptance of responsibility. *See* Doc. 37 at 14. Additionally, due to the posture of the case, the Court struggles to conclude that the counsel's suggestion not to jeopardize the Court's acceptance of Petitioner's plea could have possibly served to negate the under-oath statements made by Petitioner. As one court noted, "[a] defendant who claims to have relied on faulty advice when pleading guilty is hard-pressed to show he actually relied on that advice if he made no attempt to withdraw his plea once he learned from the PSR that the advice was likely faulty." *Neal v. United States*, JPG-19-1360, 2021 WL 3668680, at *7 (S.D. Ill. July 8, 2021). Here, Petitioner made no effort to withdraw his plea agreement after learning of his ultimate guideline range. This failure is exacerbated by virtue of the fact that he had different counsel at his plea colloquy and his sentencing. As such, Petitioner has failed to raise a compelling reason for crediting assertions in the Motion that are squarely controverted by his prior statements under oath.

In light of the foregoing, the Motion is DENIED as it relates to Petitioner's claim that his counsel was ineffective in the plea negotiation process.[13] Accordingly, Petitioner has not raised a

---

[13] Petitioner makes several other contentions that are nestled into his claim regarding ineffective negotiation, but these issues are patently unrelated. And, these claims fare no better. He argues that his counsel deprived him of the opportunity to plead guilty at his initial appearance by informing the Court that Petitioner was pleading not guilty. Doc. 74 at 1. This is a rather bizarre assertion, and the Court cannot fathom how counsel was ineffective, or Petitioner was prejudiced, for failure to immediately enter a plea of guilty. If anything, counsel would likely have been ineffective if he recommended that Petitioner plead guilty without exploring the benefits of a plea

credible basis for invalidating his plea agreement, and thus his waiver of appeal and collateral attack remains fully operational.[14]

Claim #5: Petitioner's counsel was ineffective for failing to direct appeal.

Petitioner claims that his counsel was ineffective for failing to file, or otherwise encourage, a direct appeal. Doc. 74 at 3. However, given the veracity of the appeal waiver consequent to his valid guilty plea and agreement, and the non-prejudicial nature of the Government's breach of the agreement, counsel reasonably advised Petitioner not to file a direct appeal *See United States v. Wells*, No. 22-3020, 2024 WL 378659, at *2 (7th Cir. Feb. 1, 2024) ("Counsel next considers, and correctly concludes, that challenging [the defendant's] sentence would be frivolous because the broad appeal waiver forecloses any argument."). Indeed, the Seventh Circuit declines to enforce an otherwise valid appeal waiver in only a few, limited circumstances – none of which are present here. *See Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012) (noting that the court will consider an appeal, despite a waiver, "when the sentence exceeds the statutory maximum, when the plea or court relies on a constitutionally impermissible factor like race…"); *see also United States v. Litos*, 847 F.3d 906, 910-11 (7th Cir. 2017) (indicating that the court may, in certain circumstances, decline to enforce a valid appeal waiver to avoid a "miscarriage of justice"); *Solano v. United States*, 812 F.3d 573, 577-78 (7th Cir. 2016) (stating that counsel may file an appeal to

---

[14] agreement. In an equally unavailing fashion, Petitioner also argues that he never received evidence in a motion for discovery. Doc. 74 at 2. However, the record makes clear that the defense was in possession of discovery materials comprising 1,936 pages and 42 videos. *See* Doc. 26.

[14] The Court notes that Petitioner claims in his Motion that he was deprived of the decision of whether to plea or go to trial by virtue of his counsel's lack of disclosure and discussion. Doc. 61 at 7. This assertion, however, is undermined by his claims in the amended motion (Doc. 74) that his counsel had not been able to secure a lower sentencing range or transfer, pursuant to their conversations. Moreover, this claim is also undermined by his testimony at the plea colloquy that he read and discussed the plea agreement with his counsel, and that the plea agreement represented the entire understanding he had with the Government. Doc. 65 at 5.

determine the scope of an unclear waiver). Furthermore, counsel may well have reasonably advised that filing a direct appeal would have caused Petitioner to breach his obligation under the plea agreement and therefore cause him to lose some of the benefits of the agreement. *See United States v. Whitlow*, 287 F.3d 638, 639 (7th Cir. 2002). Additionally, Petitioner has failed to articulate any meritorious claims that could have been raised on appeal, so he cannot possibly show prejudice. Thus, to the extent Petitioner claims IAC for failure to file a direct appeal, his Motion is DENIED.

As noted, Petitioner raises several non-IAC claims, but they are not properly before the Court as they are barred by the waiver of his right to collateral attack. *See Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2013). Even so, the Court addresses these claims below and readily concludes they fail on the merits.

Claim #6: Petitioner is innocent.

In the Reply, Petitioner asserts that he is entitled to relief due to his actual innocence. Doc. 67 at 8-10. In particular, he claims to have "shown he was elsewhere and with many alibi witnesses when the alleged offense occurred and electronically recorded [sic]." *Id.* at 9.

In order to show actual innocence, a petitioner must support his claim with "'reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)); *see also*, *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.") (citation omitted).

Here, Petitioner has not provided any evidence, new or otherwise, that can possibly support his claim.[15] Although Petitioner argues that an alibi exists, he has failed to describe any witnesses or electronic records with an iota of specificity, let alone meaningful particularity, which in turn undermines his claim. *Cf. Granada v. United States*, 51 F.3d 82, 85 (7th Cir. 1995) (noting in the context of § 2255 IAC claim for failure to call a witness that a petitioner's claim could not succeed as "he ha[d] not identified who the[] witnesses were or what their testimony would have been."). Furthermore, Petitioner's self-serving attestations alone cannot support his claim. *See Ryburn v. Ramos*, JBM-09-1176, 2014 WL 51880, at *3 (C.D. Ill. Jan. 7, 2014) ("A self-serving statement of the petitioner alleging actual innocence is not enough.") (citing *Hubbard v. Pinchak*, 378 F.3d 333, 340–41 (3d Cir. 2004)). Indeed, the only evidence in the record of Petitioner's culpability is the stipulation of fact set forth in the plea agreement. Although "pleading guilty is not an absolute bar to an actual innocence claim, it nevertheless "is evidence that the defendant committed the crimes to which he pleaded." *Hubbard v. Polley*, SEM-15-3103, 2017 WL 460813, at *7 (C.D. Ill. Feb. 2, 2017) (citing *Bousley v. United States*, 523 U.S. 614, 623–24 (1998)). In light of the foregoing, to the extent the Petitioner raises a claim for actual innocence, it is DENIED.[16]

---

[15] As discussed, the Reply references an amended motion that was never filed. The later-filed amended motion (Doc. 71 and Doc. 74) does not appear to precisely track these references. However, Petitioner had sufficient time to detail the amended motion as he saw fit, and the Court shall not read the tea leaves in an attempt to decipher what the apparently non-existent, or at least non-filed, initial amended motion may or may not have detailed.

[16] The Court provided the Government with ample time to respond to Petitioner's amended motion, and by reference, any related claims in the Reply. *See* Text Order Dated 03/15/2024. The Government's failure to brief the Court serves as a waiver to any timeliness challenge concerning Petitioner's new claims. *See Anderson v. United States*, 981 F.3d 565, 571 (7th Cir. 2020).

Claim #7: Petitioner was erroneously sentenced as a career offender.

Petitioner argues that he was improperly sentenced as a career offender. Doc. 61 at 12-13. However, the Court did not apply a career offender enhancement under the United States Sentencing Guidelines Manual § 4B1.2(b) when sentencing Petitioner. Indeed, the PSR, which as discussed above was adopted by the Court, makes clear that no Chapter Four Enhancement, *i.e.*, a career offender enhancement, applies in this case. Doc. 37 at 15. Therefore, the Motion is DENIED insofar as it relates to an improper application of the career offender enhancement.

Claim #8: The sentencing judge did not comply with the requirements of § 851.

Petitioner claims that this court failed to comply with the "necessary procedures" to establish his prior convictions under § 851. Doc. 61 at 9. However, as discussed *supra* in great detail, § 851 did not apply at Petitioner's sentencing. Accordingly, there were no § 851 procedures for the Court to follow. Thus, the Motion is DENIED as it relates to the Court's averred failure to comply with the procedural requirements of § 851.

## IV.   EVIDENTIARY HEARING

An evidentiary hearing is not always necessary in § 2255 cases. *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). However, "[a] hearing is required unless the record conclusively shows that the movant is not entitled to relief." *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018); 28 U.S.C. § 2255(b). Here, no hearing is necessary, because Petitioner's claims are readily resolved from the record, and the Court requires no further information to dispose of the Motion.

## V.   CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a COA which may issue only if he has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not made such a showing. To the extent Petitioner's claims are resolved

21

on procedural grounds, Petitioner is not entitled to a COA because reasonable jurists could not disagree about the merits of his underlying constitutional claims and about whether the Court's procedural rulings are correct. *See Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Thus, the Court declines to issue a COA.[17]

## VI.    CONCLUSION

Based on the foregoing, Petitioner's § 2255 motion (Doc. 61. Doc. 71, and Doc. 74) is DENIED in its entirety, and no evidentiary hearing is necessary. The Court further DECLINES to issue a certificate of appealability. Additionally, Petitioner's motion for leave to file his Reply (Doc. 67) is GRANTED. The Court also *sua sponte* directs the Clerk to SEAL the amended motion (Doc. 71 and Doc. 74), and the Reply (Doc. 67), as the filings contains sensitive, and possibly privileged, information.

ENTERED this 15th day of April 2024.

s/ *James E. Shadid*
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE

---

[17] Although Petitioner "may not appeal the denial of a certificate of appealability, [] he may seek a certificate from the Court of Appeals for the Seventh Circuit." *Wyatt v. United States*, JPG-15-795, 2017 WL 2180815, at *2 (S.D. Ill. May 18, 2017) (citing Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts)).